**PRUDENTIAL PROPERTY AND CASUALTY CO.**

v.

**ERIE INSURANCE CO.**

Civ. A. No. 86–1798.

United States District Court, E.D. Pennsylvania.

Dec. 30, 1986.

Walter S. Jenkins, Philadelphia, Pa., for plaintiff.

William Weber, Jr., Philadelphia, Pa., for defendant.

## MEMORANDUM

NEWCOMER, District Judge.

I have before me in this action a motion by plaintiff for summary judgment. The motion was submitted on a stipulated set of facts. The summary judgment motion and the case essentially raise one issue: whether defendant properly disclaimed coverage for a permissive driver under a policy of insurance based on the driver's refusal to cooperate in the preparation of the defense and the arbitration of the case against him. For the reasons discussed below, plaintiff's motion will be denied. Because there are no factual issues which remain to be decided, I will enter judgment in favor of the defendant.

## I.

This case was submitted to the Court on a stipulated factual record, and the facts are as follows. On May 29, 1982, an automobile accident occurred in the City of Philadelphia between Theodore Perry and George Blatch. Blatch was driving a car owned by Mr. Barnabas McNeill. At the time of the accident, Mr. McNeill did not reside with his ex-wife, Mrs. Marcia McNeill or his daughter, Toi McNeill. Mr. McNeill had given Mrs. McNeill permission to use the car; Mrs. McNeill had given permission to Toi McNeill, who in turn gave permission to Blatch. Mr. McNeill never directly gave permission to Toi McNeill or to Blatch to operate the car.

At the time of the accident, Mr. McNeill was the named insured on a policy of automobile insurance issued to him by the defendant, Erie Insurance Co. ("Erie"). Erie made personal contact with Blatch, who gave to Erie a written statement concerning the accident. Blatch then refused to sign the statement. Blatch's statement indicated that Perry caused the accident when he made a quick turn in front of the car operated by Blatch. Perry's version of the accident, not surprisingly, contradicts that of Blatch.

On August 25, 1983, Perry filed a lawsuit against Mr. McNeill and Blatch, but the Sheriff for Philadelphia County did not successfully serve Blatch. The complaint was reinstated on September 23, 1983 and again on November 2, 1983. On December 9, 1983, Joseph P. Connor, III, Esquire, of the law firm Connor & Weber, entered his appearance on behalf of both Mr. McNeill and Blatch. Two days earlier, Blatch had been notified that Erie had retained Mr. Connor

to defend him in the action filed by Perry. Erie requested at that time that Blatch cooperate with defense counsel retained on his behalf.

On January 24, 1984, the Court of Common Pleas directed that Blatch could be served by regular mail. His counsel then sent him a copy of the proposed Answer, and requested that he sign a verification of the proposed Answer. Blatch never contacted counsel to respond to the letters transmitted or the pleadings served or received. On February 10, 1984 and again on February 23, 1984, defense counsel wrote to Blatch indicating that it was imperative that Blatch contact counsel and cooperate in the defense of his case. Blatch never responded to defense counsel's repeated telephone calls and letters requesting cooperation in the preparation and signing of the Answer and in discovery. On February 27, 1984, Connor filed an unverified Answer on behalf of Blatch. After continuing unsuccessfully to secure Blatch's cooperation, Connor advised Erie that while Mr. McNeill had cooperated in defending the action, Blatch had not as of that time.

Shortly thereafter, an arbitration hearing in *Perry v. McNeill* was scheduled for May 3, 1984 at 9:30 am. While making continued efforts to secure Blatch's cooperation, Connor advised Blatch that it was necessary for him to attend the May 3, 1984 arbitration. Blatch then contacted Connor's office and informed Connor that he would attend the arbitration. On May 3, 1984, Blatch failed to appear for the arbitration. Defense counsel obtained a continuance, and the arbitration was rescheduled for May 16, 1984. Connor then wrote to Blatch, informing him of the new arbitration date and requesting that Blatch contact his counsel immediately. Counsel then reached Blatch by telephone and advised him that it was necessary that Blatch appear for the arbitration. Blatch acknowledged that he had received the letters sent to him by counsel, apologized for not cooperating in the past and promised to appear.

On May 7, 1984, Connor wrote to Blatch, advising him that the arbitration had been continued from May 16, 1984 until May 22, 1984 at 9:30 am, and requesting his attendance. Blatch never contacted Connor as requested in the letters informing him of the arbitration dates, and did not appear for the arbitration either on May 16, 1984 or May 22, 1984. Blatch did, however, take that day off from work. At the arbitration on May 22, 1984, defense counsel again requested a continuance, but this second request was denied. On May 23, 1984, the panel of arbitrators found in favor of Perry and against Blatch in the amount of $8,062.50.

Connor advised Erie's litigation supervisor, Robert T. Giannone, on June 1, 1984 what occurred at the arbitration. On June 6, 1984, Erie wrote to Blatch informing him that they were disclaiming coverage for lack of cooperation, and instructed Connor & Weber to withdraw their appearance for Blatch in the suit. In order to protect Blatch's rights in the litigation, an appeal of the arbitrator's decision was filed on Blatch's behalf, and Blatch was so informed.

On August 9, 1984, defense counsel filed with the Court of Common Pleas a notice and petition to withdraw as counsel for Blatch, and served copies on Blatch and on Prudential Property and Casualty Insurance Co., Perry's uninsured motorist insurance carrier. The notice advised that the return date on the motion was August 26, 1984, and that a hearing on the motion was set for September 6, 1984. Prudential then filed a motion for leave to intervene in the underlying action, but did not oppose the withdrawal. Blatch did not oppose the petition to withdraw or appear for the hearing. The petition for leave to withdraw as counsel for Blatch was then approved, and the motion for leave to intervene by Prudential was denied as moot. Connor & Weber withdrew as counsel for Blatch. Neither Prudential nor Blatch filed a motion for reconsideration of either decision.

Shortly thereafter, counsel for Perry made a claim for uninsured motorist benefits against his carrier, Prudential. Prudential paid to Perry $10,299.56 in settlement of the uninsured motorist claim on January 10, 1985. On September 13, 1985,

counsel for Perry and McNeill in the underlying action stipulated that the action had been settled, and the case was discontinued as to McNeill only. On March 27, 1986, the Court of Common Pleas dismissed Blatch's appeal from the arbitration for lack of prosecution, and reinstated the arbitration award. The next day, Prudential filed the instant declaratory judgment action against Erie.

## II.

The law in this area appears to be clear.[1] As the Superior Court stated in *Paxton National Ins. Co. v. Brickajlik,* 342 Pa.Super. 621, 493 A.2d 764 (1985):

The purpose of the cooperation clause is to protect the insurer's interest and to prevent collusion between the insured, to whose rights the insurer has been subrogated, and the third party tortfeasor. See: 8 Appleman, Insurance Law and Practice § 4771. The cooperation clause is a material condition to the liability of the insurer. *Cameron v. Berger,* 336 Pa. 229, 233, 7 A.2d 293, 295 (1938). Before an insurer is relieved of liability, however, it must show that there was more than an unsubstantial or immaterial departure from the letter of the policy and that the insurer suffered substantial prejudice because of the conduct of the insured. *Conroy v. Commercial Casualty Ins., Co.,* 292 Pa. 219, 140 A. 905 (1928).

Furthermore, prejudice must be demonstrated and it cannot be presumed. See *Federal Kemper Ins. Co. v. Johnson,* 21 D. & C. 3d 724, 728 (Cumberland Co.1981), citing *Frank v. Nash,* 166 Pa.Super. 476, 71 A.2d 835 (1950).

In *Paxton,* the insurer which had reimbursed its insured for his loss in the theft of a truck filed an action against the insured to recover damages for the insured's alleged breach of the cooperation clause, after the insured refused to sign a complaint to enable the insurer to sue a third party bailee in the insured's name. The Superior Court held that because the insured had already authorized the insurer to sue in his name or its own any third party responsible for the loss, the refusal of the insured to sign the complaint was not a material breach of the cooperation clause of the contract. As a result, the insurer could not disclaim liability.

In *Spears v. Dawson,* 10 D. & C.3d 703 (Allegheny Co.1979), the parties were involved in an automobile collision. Dawson's insurer, Keystone Ins. Co. ("Keystone"), hired counsel to represent Dawson in the damage action filed by Spears. Although he received notice of the arbitration hearing and was requested by counsel to attend, Dawson failed to appear, and an award was made in Spears' favor. Keystone did *not* appeal the arbitration award, although an appeal would have entitled Dawson—and indirectly, the insurer—to a *de novo* hearing. Keystone then notified Dawson that it would not satisfy the award because of Dawson's noncooperation. Spears then sought to execute on the award, naming Keystone as the garnishee. Keystone opposed the garnishment, and Spears moved for summary judgment.

After disposing of other issues not raised by the instant case, the court denied plaintiff's motion. It explained:

Since an appeal from an arbitration award entitles the parties to a de novo hearing, Keystone, by taking the appeal on behalf of the insured, could have cured the insured's breach of the cooperation clause. And its failure to do so may prevent Keystone from establishing that the insured's breach of the cooperation clause resulted in substantial prejudice and injury to Keystone's defense of plaintiff's claim

However, we cannot as a matter of law rule that an insurance company's failure to file an appeal on behalf of an insured

---

1. This is so at least for the time being. The Supreme Court of Pennsylvania has taken an appeal in the most recent decision of the Superior Court on these matters. *Paxton National Ins. Co. v. Brickajlik,* 342 Pa.Super. 621, 493 A.2d 764 (1985), petition for allowance of appeal granted, 505 A.2d 252 (Pa.1986). There are certain matters raised in the dissent to the *Paxton* case which may be subjected to review without calling into question the legal analysis which applies in this case. See *Paxton, supra,* 493 A.2d at 766–67 (Cavanaugh, J., dissenting).

who fails to appear for an arbitration hearing bars that insurance company from proving that the breach of the cooperation clause at the arbitration proceeding resulted in substantial prejudice and injury to its position.... [T]here are situations in which a fact finder may conclude that an insurance company need not take an appeal from an arbitration award on behalf on an insured who fails to appear because it is so unlikely that the insured would fulfill his or her duty to cooperate at a subsequent de novo hearing.

*Id.* at 713–14.

The case before me differs factually in important respects from *Spears.* First, Erie did take an appeal from the arbitration award to preserve Blatch's rights to a *de novo* hearing.[2] Second, Blatch's breach of the cooperation clause was far more egregious than a mere failure to appear once for an arbitration hearing. Rather, he repeatedly ignored telephone calls and letters from counsel over a period of ten months, even refusing to accept letters sent to him by certified mail. He failed to appear for two arbitration hearings. He refused to participate in the preparation of an Answer to the Complaint, and in all other instances when his counsel requested his assistance and cooperation. Indeed, Blatch did not even oppose the withdrawal of Connor & Weber as his counsel. And after the withdrawal of his counsel, Blatch failed to take any steps to make use of the appeal from the arbitration taken on his behalf, to the point where it was dismissed for lack of prosecution eighteen months after he received notice of the withdrawal of his counsel, and twenty two months after the original arbitration award. And third, Blatch's refusal to cooperate deprived the insurer of the only evidence and testimony which would contradict the plaintiff's version of the accident.

**2.** It is important to note that *Spears* implicitly recognized that a material breach of a cooperation clause can result in the termination of the insurer's obligation to indemnify the insured. *Spears* denied a summary judgment motion by the party allegedly injured on account of defendant's tortious conduct, reserving for deci-

Under these circumstances, it is clear that the conditions for disclaimer of insurance coverage for breach of the cooperation clause have been met. Blatch failed to cooperate at all, breaching a duty which is "a material condition to the liability of the insurer." *Paxton, supra,* 493 A.2d at 765. The breach by Blatch was not "unsubstantial," *id.* at 766, and it caused "substantial prejudice" to the insurer. *Id.* The words used by the Pennsylvania Supreme Court in the analogous case of *Cameron v. Berger, supra,* are applicable here: "[Defendant] was not only an essential witness ..., but the only witness for the defense, and [his] aid was necessary for the preparation and trial of the suit[ ] against [him]. [His] voluntary disappearance left the [insurer] without a defendant and a defense. Under such circumstances [he] wa precluded from indemnification under [the] policy." 336 Pa. at 233, 7 A.2d 293.

sion after an evidentiary hearing the question whether "it is so unlikely that the insured would fulfill his or her duty to cooperate" that the appeal the arbitration award would have been a futile gesture. 10 D. & C. 3d at 713–14. The stipulated factual record before me leaves no such questions.