NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-1414
_____

ALLEN L. FEINGOLD;
PHILLIP GODDARD

v.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY

Phillip Goddard,
                              Appellant
_____

On Appeal from the District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 2-11-cv-06309)
District Judge: Honorable Thomas N. O'Neill, Jr.
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
March 2, 2015

Before: AMBRO, SCIRICA, and ROTH, <u>Circuit Judges</u>

(Filed: October 27, 2015)

_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

**SCIRICA**, *Circuit Judge*

Phillip Goddard appeals the grant of summary judgment in favor of State Farm Mutual Automobile Insurance Company on his breach of contract and bad faith claims.[1] We will affirm.[2]

**I.**

In August 1998, a vehicle driven by Michael Gant struck Goddard's vehicle in the rear in heavy traffic. A77. Before Goddard's vehicle could be moved, a vehicle driven by Michael Bogan also struck Goddard's vehicle in the rear. A75-77. Bogan maintained $25,000 in liability coverage at the time of the accident, A28, but it is unknown whether Gant was insured.

Later that year, Goddard filed a personal injury protection ("PIP") claim with State Farm. From December 1998 to February 1999, State Farm made multiple attempts to schedule an independent medical examination of Goddard. A108-24. Although Goddard's policy required him to cooperate with State Farm by submitting to reasonable requests for medical examination, A84, 101, Goddard did not attend multiple scheduled appointments, A109, 113-14, and failed to provide State Farm with convenient dates or

---

[1] Feingold, Goddard's former counsel and a disbarred attorney, sought to litigate this matter as a purportedly pro se party alongside Goddard. Feingold claimed that he had been assigned a portion of Goddard's claims in this matter. The District Court dismissed Feingold's claims for lack of standing and we affirmed. *Feingold v. State Farm Mut. Auto. Ins. Co.*, 517 F. App'x 87 (3d Cir. 2013). Accordingly, Feingold is no longer a party to this matter.

[2] The District Court had jurisdiction under 28 U.S.C. § 1332. We have jurisdiction under 28 U.S.C. § 1291.

schedule an appointment at his own convenience, A120-24. Unable to conduct an independent medical examination of Goddard, State Farm obtained peer reviews of Goddard's medical reports that determined that Goddard had reached maximum medical improvement and that further treatment was not medically necessary, A125, 134-35. In contrast, Goddard produced a doctor's report from August 2000 that discussed additional treatment options, including cortisone injections and vertebral axial decompression therapy. A136-37.

In March 2001, two years after State Farm's last request for an independent medical examination, Goddard filed a petition to appoint arbitrators for uninsured motorist/underinsured motorist claims ("UM/UIM"). A19. The petition was denied. A39. Three years later, in July 2004, Goddard filed another petition to appoint arbitrators and the parties agreed to select arbitrators in Delaware. A43. From September 2005 to April 2006, State Farm again made multiple attempts to schedule an independent medical examination; repeatedly warned Goddard that failure to do so would compromise his ability to recover; and refused to proceed to arbitration until the medical examination occurred. A47-51, 138. Specifically, on April 11, 2006, State Farm informed Goddard that it was closing his file because his failure to submit to an independent medical examination indicated that he "did not intend to pursue a claim." A138. Ten months later, in February 2007, Goddard finally responded by telling State Farm, "You may consider anything you want . . . but what you do, does not matter in the least." A52.

For the next three and a half years, Goddard made no further contact and did not schedule an independent medical examination. Then, in December 2010, following the

3

suspension of Goddard's former counsel's law license, Goddard's new counsel requested that State Farm proceed to arbitration. A61-62. State Farm responded that it had closed the file and that the claim was time-barred. A53.

In October 2011, thirteen years after the accident, more than twelve years after State Farm's first request for an independent medical examination for the PIP claim, and more than six years after the first request for the UM/UIM claim, Goddard filed the instant lawsuit against State Farm for breach of contract and bad faith. A58-66. Finding that Goddard's failure to submit to an independent medical examination constituted a material breach of the agreement that had prejudiced State Farm, the District Court granted State Farm's motion for summary judgment. *Goddard v. State Farm Mut. Auto Ins. Co.*, 992 F. Supp. 2d 473 (E.D. Pa. 2014).

## II.

### A.[3]

State Farm has not waived its noncooperation defense.[4] Although Federal Rule of Civil Procedure 8(c) calls for affirmative defenses to be raised in the answer, we have recognized that "affirmative defenses can be raised by motion, at any time (even after

---

[3] We review the District Court's "decision regarding the waiver of an affirmative defense for abuse of discretion." *Sharp v. Johnson*, 669 F.3d 144, 158 (3d Cir. 2012).

[4] We also find that State Farm is not equitably estopped from asserting its noncooperation defense. Goddard has failed to show that he reasonably relied on a misrepresentation by State Farm to his detriment. *See Blofsen v. Cutaiar*, 333 A.2d 841, 844 (Pa. 1975). Goddard does not claim that he structured his litigation strategy upon the belief that State Farm had abandoned the defense, nor does he describe any actions he otherwise would have taken. In addition, State Farm raised the defense in its motion for summary judgment less than one year after the filing of Goddard's amended complaint.

trial), if plaintiff[] suffer[s] no prejudice." *Cetel v. Kirwan Fin. Grp., Inc.*, 460 F.3d 494, 506 (3d Cir. 2006). Here, we agree with the District Court that Goddard could not have been surprised by State Farm's assertion of his noncooperation as a defense. In its first attempt to schedule an independent medical examination, State Farm informed Goddard of his duty to cooperate and warned that his "failure to appear for [an independent medical] examination may result in a denial of benefits." A108. This warning was repeated multiple times. In fact, an examination of all correspondence shows that throughout the parties' dealings Goddard's failure to submit to an independent medical examination was a continuing obstacle to State Farm's willingness to proceed. In addition, there is no action Goddard could have taken between State Farm's filing of its answer and its motion for summary judgment that could have undone his noncooperation. Accordingly, State Farm's actions did not prejudice Goddard and the court did not abuse its discretion by determining that State Farm's affirmative defense was not waived.

## B.[5]

Summary judgment was properly granted on Goddard's breach of contract claim. An insurer may be relieved of its obligations under an insurance policy by showing the insured has substantially prejudiced it through a material breach of contract. *See, e.g.*, *Conroy v. Commercial Cas. Ins. Co.*, 140 A. 905, 907 (Pa. 1928). Here, we agree with the

---

[5] We exercise plenary review over the District Court's grant of summary judgment. *Pacitti v. Macy's*, 193 F.3d 766, 772 (3d Cir. 1999). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Neither party disputes that Pennsylvania law governs this diversity action.

District Court that there has been a material breach and substantial prejudice as a matter of law. *See Cameron v. Berger*, 7 A.2d 293, 296 (Pa. 1938) (material breach as a matter of law); *Metal Bank of Am., Inc. v. Ins. Co. of N. Am.*, 520 A.2d 493, 498 (Pa. Super. Ct. 1987) (prejudice as a matter of law). The cooperation clause of the policy clearly established Goddard's duty to submit to reasonable requests for medical examination, and correspondence between Goddard and State Farm show Goddard failed to fulfill this duty despite multiple requests by State Farm over a number of years. In addition, Goddard's substantial breach prejudiced State Farm by denying it the opportunity to evaluate his health at a time that was close enough to the accident to permit a determination of whether Goddard's injuries were caused by the first accident, the second accident, or existed prior to both. This information was vital to State Farm's ability to determine whether it could seek contribution given that one driver was known to be insured.

Summary judgment was also properly granted on Goddard's bad faith claim. "[A]n insurer may defeat a claim of bad faith by showing that it had a reasonable basis for its actions." *Amica Mut. Ins. Co. v. Fogel*, 656 F.3d 167, 179 (3d Cir. 2011); *see also Terletsky v. Prudential Prop. & Cas. Ins. Co.*, 649 A.2d 680, 688 (Pa. Super. Ct. 1994). State Farm had a reasonable basis for requesting an independent medical examination, refusing to proceed to arbitration without an examination, and denying Goddard's claim. In addition to the need for a medical examination to determine the cause of Goddard's injuries, an independent medical examination was reasonably necessary to determine whether Goddard had reached maximum medical improvement. State Farm's peer reviewers believed Goddard achieved maximum medical improvement by February 1999,

6

A125-35, while Goddard produced a doctor's report from August 2000 that discussed additional treatment options. A136. Accordingly, State Farm had a reasonable basis for its actions because an independent medical examination was needed to determine causation and clarify inconsistencies in prognosis. *See Johnson v. Progressive Ins. Co.*, 987 A.2d 781, 784 (Pa. Super. Ct. 2009) ("[R]equest for a physical examination . . . was reasonable because . . . report was contradicted by notations in medical records indicating that the surgery was successful and Appellant was improving.").

## III.

For the foregoing reasons, and for those provided in the District Court's thorough and well-reasoned opinion, we will affirm the court's grant of summary judgment in favor of State Farm.